UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MITCHELL YOUNG, et al.

    Plaintiffs,

v.

JEFFREY L. NEWTON,, et al.

    Defendants.

Case No. 1-18-cv-00851-AJT-JFA

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT COLLINS' MOTION FOR SUMMARY JUDGMENT**

Defendant Joe Collins, by counsel, submits this Memorandum of Law in Support of his Motion for Summary Judgment and states as follows:

**I.    PROCEDURAL BACKGROUND AND ALLEGATIONS**

Four Plaintiffs filed this prisoners' civil rights case for declaratory and injunctive relief and monetary damages against Riverside Regional Jail and its employees (collectively, "RRJ") and two independent contractors, namely food supervisor Keith and Chaplain Joe Collins. In their Second Amended Complaint, Plaintiffs allege "violations under the First, Eighth, and Fourteenth Amendments to the United States Constitution, and religious guarantees under the Virginia Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. Sec 2000cc *et seq* and pursuant to 28 U.S.C. §1331 and 42 U.S.C. §1983..." *See* Second Amended Complaint, page 2, ECF doc 10.

In essence, four Muslim inmates claim religious discrimination during 2018 in two main areas: (1) the Life Learning Program and (2) Ramadan 2018 meals. *Id.* Defendants deny liability and damages.

Extensive discovery was completed on 8-6-19 and included written discovery, production

of documents, and twelve depositions of parties, except Plaintiff Mayo, who has not been located, and various corporate representatives, pertaining to food services and/or chaplaincy services. Judge Trenga set the deadline to file dispositive motions is 8-28-19, and the motions hearing for 9-20-19.

## II. STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Statement of Material Facts Not in Genuine Dispute, attached as Exhibit 4, and incorporated herein by reference.

## III. <u>LEGAL ARGUMENT</u>

### A. Standard for Summary Judgment

Fed. R. Civ. P. Rule 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party can support undisputed facts by either citing to written discovery responses, documents, deposition testimony, affidavits, admissions or other materials, or by showing that an adverse party cannot produce admissible evidence to dispute facts. *Id.* If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 & n. 10 (1986). The existence of only a "scintilla of evidence" is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 251-52 (1986). A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt." *Cox v Cty. Of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001). The substantive law determines what is material. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A fact that is not of consequence to the case, or is not relevant, is not material. *Id.*

In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden to inform the court of their basis for the motion and to establish the nonexistence of genuine issues of fact. *Id. at 323*. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must then present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id. at 248*.

**B.     Defendant Collins is entitled to summary judgment as a matter of law.**

1. **Constitutional Rights for Inmates**

Constitutional rights for inmates must be evaluated within the context of incarceration. The Supreme Court recognized that "[c]ourts are ill-equipped to deal with the increasingly urgent problems of prison administration." *Id. at 199*. "As a consequence, courts must accord deference to the officials who run a prison, overseeing and coordinating its many aspects, including security discipline and general administration." *Id.* "A prison regulation that abridges inmates' constitutional rights is valid if it is reasonably related to legitimate penological interests." *Id.* Actions by defendants reasonably related to legitimate penological interests concerning health, safety, security and budgetary concerns, do not violate Plaintiffs's constitutional rights. *Id.*

3

"[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone, v Estate of Shabazz*, 482 U.S. 342, 350 (1987); *Hernandez v Comm'r*, 490 U.S. 680, 699 (1989) 482 U.S. at 348, quoting *Price v Johnston,* 334 U.S. 266, 285 (1948). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is rationally related to furtherance of a legitimate governmental or penal interest. *O'Lone*, 482 at 349; *Turner v Safley,* 482 U.S. 78, 89-91 (1987). Prison restrictions that impact the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution. *See Turner,* 482 U.S. at 89. Plaintiff must be able to show facts that the official action or regulation substantially burdened his exercise of his sincerely held religious belief. *O'Lone at 350.*

Participation in the Life Learning Program is not constitutionally required, nor a protected right for inmates. It was a voluntary prison program open to all denominations. Moreover, Plaintiffs did not even apply to the Life Learning Program, and thus, were not denied access based on religious discriminatory reasons. In effect, Plaintiffs do not even have standing to sue. Use of biblically based materials in the Life Learning Program is not *per se* discriminatory or unconstitutional. A variety of life skill materials, including secular, for voluntary participants to study, review and consider does not exclude or unconstitutionally impact religious freedoms. Many denominations refer to various aspects of the Bible, including Muslims. The law does not require materials from all denominations to be part of such a program. The Life Learning Program was voluntary, not mandated, and offered inmates a variety of perspectives to study, learn and/or address life skills for intellectual/emotional success, spiritual success, relational success, occupational success, and financial success. *See Exhibit 1, Affidavit of Collins, para. 4.* The Life Learning Program was open to all inmates "Regardless

4

of Religious affiliation." *Id. at para. 7.*

Lastly, Plaintiffs were afforded constitutional due process and a grievance process for their complaints pertaining to Ramadan meals. As chaplain, Defendant Collins did not have any independent final authority, responsibility or control over the requisite final approval of an inmate's requests for specific meals. *Id. at 12.* Such requests were forwarded to RRJ, for final consideration and decision-making for approval, per their policies, procedures and concerns for the safety and security of the jail. *Id. at 12.* As chaplain, Defendant Collins did not make any decisions regarding the timing, delivery, nature, and nutritional and caloric content of meals served by RRJ during Ramadan to inmates. Plaintiffs' claims pertaining to issues with inadequacies or delays with religious meals during Ramadan were not due to any wrongdoing or actions by Defendant Collins since he had no control or authority over such actions.

2. **Plaintiffs fail as a matter of law on their §1983 civil rights claims**.

To prevail against a defendant on a civil rights claim brought under §1983, a plaintiff must establish that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (quoted in *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (4th Cir. 1999)). Normally, "[i]n order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" See, e.g., *Garraghty v. Com. of Va., Dept. of Corrections*, 52 F.3d 1274, 1280 (4th Cir. 1995) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

The undisputed facts show that Defendant Collins was not employed by Riverside Regional Jail ("RRJ'), but rather, he provided chaplain services to inmates at RRJ as an employee of Good News Jail & Prison Ministry ("Good News"). *See Collins Affidavit at para. 1, attached as Exhibit 1.* In 2018, chaplaincy services were provided pursuant to the relevant

5

Non-Denominational Chaplain Services Contract dated 1-1-18 between Good News and Riverside Regional Jail. *See Contract, attached as Exhibit 2, as produced during discovery, RRJ 0319-23.* During the majority of 2018, RRJ Captain Laura Gray, as Chief of Programs, was responsible to oversee the duties of the chaplain under the Good News contract. *See Exhibit 3, Depo of Gray, p. 30.* Chaplain Collins communicated with and provided documents to RRJ for consideration, but did not participate in meetings by RRJ regarding final approval of the Life Learning Program. *See Exhibit 1, Affidavit of Collins, para. 6.* The Life Learning Program was a voluntary, not mandated program, that offered inmates a variety of perspectives to study, learn and/or address life skills for intellectual/emotional success, spiritual success, relational success, occupational success, and financial success. *Id. at para. 4.* Plaintiffs rights were not deprived – the Life Learning Program was open to all inmates "Regardless of Religious affiliation." *Id. at para. 7.* RRJ approved the Life Learning Program in September 2018. *Id.* RRJ had final control over inmates allowed to participate in the Life Learning Program and moved inmates to a separate housing unit. *Id. at para. 8 -9.* None of the Plaintiffs even applied to the Life Learning Program. *Id. at para. 10.* Muslims were not prohibited from participation in the Life Learning Program. *Id.* The Life Learning Program was in existence from October 15 – December 20, 2018. *Id. at para. 9-11.*

3. **Plaintiffs are unable to offer any evidence that this Defendant was acting under color of state law or that he was a state actor**

Plaintiffs terminally fail to be able to offer any evidence that this Defendant, Chaplain Collins, was acting under color of state law as required. Thus, Plaintiffs' civil rights claims fail as a matter of law. To recover under 42 U.S.C. §1983, Plaintiff must establish: (1) the deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S. Ct. 2250,

2254, 101 L. Ed. 2d 40 (1988); *Cooper v. Wilson*, No. 416CV01274RBHKDW, 2016 WL 3360670, at *1 (D.S.C. May 2, 2016), *report and recommendation adopted*, No. 4:16-CV-01274-RBH, 2016 WL 3199364 (D.S.C. June 9, 2016). To be acting under color of state law, "a defendant must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that [it] is engaged in the state's actions." *Cox v. Duke Energy Inc.*, 876 F.3d 625, 632 (4th Cir. 2017). The Fourth Circuit Court of Appeals has recognized four exclusive circumstances under which a private party can be deemed to be a state actor:

> (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.

*DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999). "'If the conduct does not fall into one of these four categories, then the private conduct is not an action of the state.'" *Id.*, at 507–08 (Citing *Andrews v. Federal Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir.1993)).

Here, plaintiff cannot establish that any act of omission of this Defendant falls under any of the above categories. Rather, this Defendant has established that he is not an employee of RRJ. Chaplain Collins is an employee of Good News, a separate non-profit private organization, which contracted with RRJ to provide chaplaincy services to inmates. The undisputed facts establish that Chaplain Collins did not have final, ultimate authority regarding programs or Ramadan meals for inmates.

Of particular significance, Courts within the Fourth Circuit have previously held that prison chaplains who were employed by private entities similar to Good News Jail and Prison Ministry providing services under similar circumstances were **not acting under color of state law**. *See*

7

*McGlothlin v. Murray*, 993 F. Supp. 389, 408 (W.D. Va. 1997), *aff'd*, 151 F.3d 1029 (4th Cir. 1998); *Lee v. Johnson*, No. 7:10CV00247, 2010 WL 3664060, at *3 (W.D. Va. Sept. 17, 2010). In *McGlothlin v. Murray*, an inmate brought a brought an action under 42 U.S.C §1983 against several prison officials and a prison chaplain alleging that they violated his First Amendment right to the free exercise of religion and his Fourteenth Amendment right to equal protection. *McGlothlin v. Murray*, 993 F. Supp. 389, 392 (W.D. Va. 1997), *aff'd*, 151 F.3d 1029 (4th Cir. 1998). The Muslim inmates unsuccessful claims for discrimination, included that a Christian inmate group was provided with a larger and more lavish bulletin board than the one provided to the Muslim group. After the District court granted summary judgment on some of the plaintiff's claims, the case was transferred to a magistrate to conduct further proceedings. *Id.* at 394. At a hearing before the magistrate, the chaplain moved for judgment as a matter of law arguing he was not a state actor and therefore could not be liable under §1983. *Id.* at 408. The court granted the chaplain's motion, finding that he was not acting under color of state law when the alleged deprivations occurred. *Id.*

In the subject case, Chaplain Collins was not an employee of RRJ, nor the Virginia Department of Corrections. *See Exhibit 1, Affidavit of Collins.* He was an employee of Good News, which contracted to provide chaplain services. *Id.* Further, the chaplain was *not* performing a traditional government function by developing and submitting the Life Learning Program to RRJ. The court noted that if it held the chaplain was a state actor, "the court would essentially be saying that the state is obligated to provide religious services to its prisoners," and that "[s]uch a ruling would be contrary to the Establishment Clause." *McGlothlin, supra.*

In a similar case, an inmate brought a 42 U.S.C. §1983 action asserting that several prison officials and a volunteer chaplain who was not an employee of the Virginia Department of

8

Corrections violated his rights under the free exercise clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act. *Lee*, at *1. There, the plaintiff, a member of the House of Yahweh, claimed the chaplain violated his First Amendment rights by failing to provide him with an opportunity to assemble with other inmates of the same religion. *Id.* at *2. He also claimed the chaplain violated his rights by not providing religious materials regarding the House of Yahewh, and by preventing the plaintiff from practicing "other aspects of his religious beliefs, including the observation of Yashua's Memorial." *Id.*

In its order dismissing the plaintiff's complaint, the court expressly noted that the plaintiff had failed to offer any evidence that the chaplain was an employee of the Virginia Department of Corrections or otherwise acting under color of state law. The court noted that the chaplain was employed by a private organization operating "under a memorandum of understanding with the [Virginia Department of Corrections] to provide chaplaincy series to [Virgina Department of Corrections'] correctional institutions." *Id.* The Court further noted that "The Chaplain Service [ and not the Virginia Department of Corrections] has the authority to hire, fire, and control the performance of chaplain duties." *Id.* According to the Court, the plaintiff failed to offer any proof that the chaplain was employed by the Virginia Department of Corrections and he even acknowledged in his complaint that "any religious program planning that the chaplain [did] [was] subject to approval by the warden." *Id.* Ultimately, because the Plaintiff failed to offer any evidence that the chaplain was an employee of the Virginia Department of Corrections or any evidence attributing any actions of the chaplain to the state, his claims against the chaplain were dismissed. *Id.* at *4.

The result here should be no different. As in *McGlothlin* and *Lee,* this Defendant provided chaplain services to inmates at RRJ as a non-employee. As an employee of Good News Jail and

9

Prison Ministry, this Defendant cannot influence jail policy and lacks independent authority to grant or deny inmate requests or approvals for programs at RRJs. Most critically however, Plaintiff has failed to offer any evidence tending to show that this Defendant was employed by the state or was otherwise acting under color of state law. Plaintiffs are unable to present any evidence that this Defendant was a state actor or acting under color of state law, so there is no need to decide whether this Defendant deprived Plaintiffs of any rights. Accordingly, Plaintiffs' claims fail as a matter of law.

4. **<u>Plaintiffs cannot show that this Defendant deprived him of any rights under the Constitution or laws of the United States.</u>**

Assuming *arguendo* this Defendant was acting under color of state law, the Court should still grant judgment in favor of this Defendant because Plaintiffs failed to offer any evidence that this Defendant personally deprived them of any protected rights. Plaintiffs alleged that this Defendant violated his rights by the Life Learning Program and Ramadan meals in 2018 at RRJ.

In order to prevail on s42 U.S.C. § 1983 claim against this Defendant, Plaintiffs must show that the defendant *personally* acted in a manner that deprived plaintiff of his rights. *Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985) (emphasis added). Plaintiff must also establish an affirmative link between a specific injury and specific conduct of the Defendant. *Birch v. Marion Cty. Sheriff Office,* No. CA 4:12-0930-TLW-KDW, 2012 WL 3877680, at *2 (D.S.C. June 15, 2012), report and recommendation adopted, No. CIV. A. 4:12-CV-930, 2012 WL 3877725 (D.S.C. Sept. 6, 2012). Even when viewing the evidence in a light most favorable to the Plaintiffs, they cannot show that this Defendant personally deprived him of any rights. This Defendant merely provided chaplaincy services which, from time to time, included inmate requests for religious meals for Ramadan. *See Exhibit 1, Collins Affidavit at para. 12-13.* It is dispositive to note that as

a non-employee of RRJ, this Defendant had no independent control, authority, or responsibility in determining whether to grant or deny the Ramadan meal requests. *Id.*

Lastly, to the extent Plaintiffs claim that this Defendant did not ensure that they were not provided with acceptable religious materials, such as good Qurans or other books, Muslim religious volunteers for Jummah services or Muslim-based programs at RRJ, first of all, these are not constitutionally required under the law set forth above; and second, this Defendant could not make these decisions independent of RRJ.

5. **Religious Land Use and Institutionalized Persons Act (RLUIPA) Claims**

Plaintiffs seeks monetary, declaratory and injunctive relief. The Life Learning Program was only in existence from mid October – mid December and no longer offered. Morever, Plaintiffs Young and Mayo are no longer incarcerated at RRJ, and thus any claims for injunctive or declaratory relief are moot. *See Incumaa v. Ozmint*, 507 F.3d 281, 286-87 (4th Cir. 2007). Additionally, RLUIPA does not authorize claims for official or individual capacity damages. *Rendelman v. Rouse,* 569 F.3d 182, 187-89 (4th Cir. 2009); *Sossamon v. Texas*, 563 U.S. 277, 292 (2011) (finding RLUIPA does not authorize a private cause of action for money damages against prison personnel for action taken in their official capacity). Accordingly, Plaintiffs' RLUIPA claims fail as a matter of law.

A plaintiff alleging a violation of RLUIPA bears the burden to establish a prima facie case, showing 1) that he seeks to engage in an exercise of religion and 2) that the challenged conduct substantially burdens that exercise. *Krieger v. Brown*, 496 Fed. Appx. 322, 324 (4th Cir. 2012) (citing 42 U.S.C. § 2000cc-1 (a)). If the plaintiff establishes a prima facie case, the burden shifts to the government to demonstrate that the limitation on the plaintiff's religious exercise is the least restrictive means of furthering a compelling government interest. Id. The term

11

"substantial burden" is not defined by statute but has been defined by the United States Supreme Court. The Court defined "substantial burden" as one which puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs" or one that forces a person to "choose between following the precepts of [his] religion and forfeiting [governmental] benefits on the one hand and abandoning one of the precepts of [his] religion on the other hand." *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (citing *Thomas v. Review Bd. Of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981)). Prison officials may appropriately question whether a prisoner's religiosity, asserted as a basis for a requested accommodation, is authentic." *Id. at 188.*

Plaintiffs have not demonstrated that Defendants' actions pressured him to modify his behavior and violate beliefs. Plaintiffs did not apply to the Life Learning Program. Plaintiffs participated in Ramadan 2018, despite alleged meal deficiencies. Thus, Plaintiffs' exercise of their Muslim religion was not adversely affected, and the challenged conduct did not substantially burden that exercise of Muslim religion. In addition, even if Plaintiffs could demonstrate a prima facie RLUIPA claim, RRJ's actions were appropriately taken for legitimate purposes to further compelling health, safety, security and budgetary interests. RLUIPA is not meant to "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Lovelace*, 472 F.3d at 190. In construing the compelling governmental interest standard, courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.*

Lastly, Plaintiff's brief reference to RLUIPA (Religious Land Use and Institutionalized Persons Act) does not provide any cognizable claim against Defendant Collins in that RLUIPA does not authorize claims for official or individual capacity damages. *Rendelman v Rouse*, 569 F.3d 182, 187-189 (4th Cir. 2009); *Sossamon v Texas,* 563 U.S. 277, 292 (2011) (finding

RLUIPA does not authorize a private cause of action for money damages against prison personnel for action taken in their official capacity). Accordingly, Defendant Collins, who is sued in his official capacity and/or as an individual is not subject to liability under RLUIPA.

6. **Defendant Chaplain Collins did not have any involvement, responsibility or control over the nutritional and caloric content of religious diets provided, nor delivery of meals, during Ramadan to inmates at RRJ.**

Chaplain Collins was not an employee of RRJ, but rather an independent contractor for Good News Jail & Prison Ministry to provide chaplain services to inmates there. *See Exhibit 1, Collins Affidavit at para. 1-2.*. Chaplain Collins did not have any independent authority, responsibility or control over the requisite final approval of specific meals. *Id. at 12.* If an inmate requested a special diet due to religious reasons, Chaplain Collins provided a Religious Diet Questionnaire for the inmate to complete, and if operational evidence of sincerity and bona fide religious belief, then the request was provided to RRJ for approval or not for a religious diet. As Chaplain, he did not make any decisions regarding the timing, delivery, nature and content of meals served during Ramadan. *Id. at 13.* The function, policy, procedure and process of RRJ and its employees and staff, along with security, logistics, staffing, cost, and kitchen concerns are all legitimate considerations. There was no involvement by Chaplain Collins in such decisions..

7. **All claims by Plaintiff Mayo should be dismissed as a matter of law due to a failure of discovery**

Plaintiffs' counsel have been unable to locate and produce Plaintiff Mayo for his requested deposition, as his whereabouts are unknown after he was released from RRJ. Accordingly, all claims by Plaintiff Mayo should be dismissed with prejudice.

## IV. CONCLUSION

For all the foregoing reasons, Defendant Collins respectfully requests that this Court grant summary judgment in his favor and against Plaintiffs on all claims.

Respectfully submitted,

/s/ Deborah E. Kane
Deborah E. Kane, Esquire (VSB 33916)
PO Box 14503
Des Moines, IA 50306-3503
Phone: 410-972-4595
Fax: 515-267-5431
dkane@guideone.law
*Counsel for Defendant Joe Collins*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of August, 2019, a copy of the foregoing was electronically filed and served to the following parties via the Court's CM/ECF system or via mail to any non-filing CM/ECF parties:

Lena F. Masri
Gadeir I. Abbas
Carolyn M. Homer
CAIR Legal Defense Fund
453 New Jersey Avenue, SE
Washington, DC 20003
lmasri@cair.com
gabbas@cair.com
chrome@cair.com
*Counsel for Plaintiffs*

Sherry A. Fox
Thompson McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, VA 23219
sfox@t-mlaw.com
*Counsel for Defendants Langley, Gray and RRJ*

Melissa York
Harman, Claytor, Corrigan & Wellman
1940 Duke Street, Suite 200
Alexandria, VA 22314
myork@hccw.com
*Counsel for Defendant Tyone Keith*

                */s/ Deborah E. Kane*
               Deborah E. Kane, Esquire