# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

**MITCHELL YOUNG**, *et al.*,

        Plaintiffs,

    vs.

**JEFFREY L. NEWTON, CJM**, *et al.*,

        Defendants.

Case No. 1:18-cv-00851-AJT-JFA

Hon. Anthony J. Trenga
Mag. Hon. John F. Anderson

**PLAINTIFFS' MEMORANDUM
IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT**

CAIR LEGAL DEFENSE FUND
Lena F. Masri (DC: 1000019)
Gadeir I. Abbas (VA: 81161)*
Carolyn M. Homer (DC: 1049145) ±
Justin M. Sadowsky (DC: 977642)
453 New Jersey Ave SE
Washington, DC 20003
Tel: (202) 516-4724
Fax: (202) 379-3317

± Admitted *pro hac vice*

*Mr. Abbas licensed in VA, not in D.C.
Practice limited to federal matters*

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................................i

TABLE OF EXHIBITS ....................................................................................................................iii

INTRODUCTION ............................................................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ................................................................2

    A.   Plaintiffs' Faith and Religious Practice While Incarcerated at Riverside Regional Jail..........2

    B.   Defendant Riverside Regional Jail Authority ...............................................................5

    C.   Riverside Regional Jail Authority's Relationship with Trinity Services Group, Inc. and Food Services Director Tyone Keith..............................................................................6

    D.   Riverside Regional Jail Fails to Provide Fasting Muslim Inmates Pre-Dawn Meals During Ramadan ...............................................................................................................8

    E.   Riverside Regional Jail Authority's Relationship with Good News Jail & Prison Ministry and Chaplain Collins ...........................................................................................10

    F.   Riverside Regional Jail Introduces Religious Segregation .........................................12

ARGUMENT....................................................................................................................................15

    I.     DEFENDANTS FAILED TO PROVIDE MUSLIM INMATES WITH ADEQUATE NUTRITION DURING RAMADAN ...............................................................................15

    A.   Defendants' Failure to Provide Timely and Sufficient Meals to Fasting Muslim Inmates During Ramadan Violates RLUIPA ...........................................................................15

    B.   Defendants' Failure to Provide Timely and Sufficient Meals to Fasting Muslim Inmates During Ramadan Violates the Eighth Amendment ..........................................................18

    II.    RIVERSIDE REGIONAL JAIL VIOLATES THE ESTABLISHMENT CLAUSE BY ENDORSING AND EMPOWERING CHRISTIANITY.................................................20

    A.   The God Pod Officially Preferred Christianity Over Islam and Other Faiths .....................20

    B.   Defendants Riverside Regional Jail Authority, Superintendent Newton, and Captain Gray Improperly Delegated State Authority to a Private Christian Church and Chaplain ...................22

    C.   Defendants Riverside Regional Jail Authority, Superintendent Newton, Captain Gray, and Chaplain Collins Improperly Required a Religious Test................................................24

    D.   Defendants' Preferential and Intrusive Religious Actions Violate *Lemon*..........................25

    III.   DEFENDANTS' PREFERENCES FOR CHRISTIANITY AND FAILURES TO ACCOMODATE ISLAM VIOLATE OTHER LEGAL DOCTRINES .......................................26

    A.   DEFENDANTS VIOLATED THE FREE EXERCISE CLAUSE ...................................26

    B.   DEFENDANTS VIOLATED THE EQUAL PROTECTION CLAUSE .........................26

    C.   DEFENDANTS VIOLATED THE VIRGINIA CONSTITUTION ................................27

IV.    PLAINTIFFS EXHAUSTED AVAILABLE ADMINISTRATIVE REMEDIES ............28

CONCLUSION.......................................................................................................................30

CERTIFICATE OF SERVICE ............................................................................................32

# TABLE OF EXHIBITS[1]

| # | Exhibit Title | Short Name | Date |
|---|---------------|-----------|------|
| 1 | Nutritional Adequacy Statement signed by Jennifer Sowers | RRJ 2018 Menus | January 1, 2018 |
| 2 | Ramadan Roster | 2018 Ramadan List | June 1, 2018 |
| 3 | Email re: Ramadan from Joe Collins to Tyone Keith, Jerome Banks, Jon Cliborne, Doug Upshaw, Dawn Flippin, Walter Minton, Jeffrey Newton, Donald Langley, Ian Rachal, Christopher Hendricks, Bill Wilson, and Laura Gray | Ramadan Email | May 3, 2018 |
| 6 | Riverside Regional Jail Authority Policy 16.01.003: Inmate Rights and Grievances | Grievance Policy | November 5, 2012 |
| 7 | Non-Denominational Chaplain Services Contract between Riverside Regional Jail Authority and Good News Jail and Prison Ministry | 2018 Good News Contract | January 1, 2018 |
| 9 | Riverside Regional Jail Authority (RRJA) Inmate Programs | Inmate Programs Summary | April 1, 2019 |
| 10 | Riverside Regional Jail Authority Policy 12.03.004: Special Diets | Diet Policy | February 14, 2017 |
| 11 | Religious Diet Interview Questionnaire for Domonick Robertson (Note: MSJ Ex. 20 contains this document) | Robertson Questionnaire | |
| 12 | 12.3 Religious Diet Questionnaire Scoring Key | Religious Scoring Key | unknown (likely February 14, 2017) |
| 13 | The Chaplain operated Life Learning Program Philosophy and Rules | LLP Flier | unknown (likely fall 2018) |
| 15 | Religious Diet Interview Questionnaire for Desmond Horton | Horton Questionnaire | November 2018 |
| 16 | Compilation of Desmond Horton grievances regarding Ramadan food services (Note: includes deposition exs. 4-5, 43) | Horton Ramadan Grievances | May – June 2018 |
| 17 | Compilation of Desmond Horton grievances regarding religious classes | Horton Classes Grievances | September - October 2018 |
| 20 | Religious Diet Interview Questionnaires for Domonick Robertson (Note: MSJ Ex. 11 is a subset of this) | Robertson Questionnaires | April and December 2018 |
| 21 | Compilation of Domonick Robertson grievances regarding religious services and food services | Robertson Grievances | May – October 2018 |

---

[1] The Parties agreed to sequence exhibit numbering across all deposition transcripts. For ease of reference of the Parties and the Court, Plaintiffs have maintained those same deposition exhibit numbers throughout their summary judgment motion. Exhibits which were not used during depositions, such as excerpts of the deposition transcripts themselves, are labeled with letters.

| # | Exhibit Title | Short Name | Date |
|---|---|---|---|
| 21a | Domonick Robertson grievance regarding Ramadan (more legible copy of first grievance in compilation) | Robertson Ramadan Grievance | May 25, 2018 |
| 22 | Life Learning Program Application (4 pages) | LLP Application | September 26, 2018 |
| 25 | Life Learning Program Application (2 pages) | LLP Application | September 26, 2018 |
| 28 | Status Report Talley Sheet | Chaplain Talley Sheet | January 1 – November 30, 2018 |
| 30 | Notice of Renewal for Contract #850-12 between Riverside Regional Jail and Trinity Services Group | 2018 Trinity Contract | October 24, 2017 |
| 32 | Excerpts of Riverside Regional Jail Authority Standard Contract, Contract #850-12 | 2011 Trinity Contract | October 4, 2011 |
| 33 | Religious Diet Interview Questionnaire for Mitchell Young | Young Questionnaire | May 2018 |
| 34 | Compilation of Mitchell Young Grievances regarding religious services and food services | Young Grievances | May – October 2018 |
| 36 | The Life Learning Program: Developed and Prepared by Good News Jail & Prison Ministry for Chaplain Joe Collins, Riverside Regional Jail | Life Learning Program Proposal | October 28, 2016 |
| 37 | Good News Jail & Prison Ministry Process to apply for LLP | LLP Application Process | unknown (likely fall 2018) |
| 39 | Mitchell Young Ramadan grievance | Young May 22 Ramadan Grievance | May 22, 2018 |
| 40 | Desmond Horton Ramadan grievance | Horton June 11 Ramadan Grievance | June 11, 2018 |
| 41 | Desmond Horton Ramadan grievance | Horton May 20 Ramadan Grievance | May 20, 2018 |
| 42 | Desmond Horton Ramadan grievance appeal | Horton June 19 Ramadan Grievance Appeal | June 19, 2018 |
| 45 | "Good News Changes Lives Behind Bars", goodnewsjail.org | Good News Homepage | August 6, 2019 |
| 46 | Chaplain Collins' Expense Reimbursement Requests and Receipts related to LLP | LLP Curriculum Receipts | July – October 2018 |
| 47a | Letter from Superintendent Jeffrey L. Newton to Mr. Rick Sweenie, Director of Chaplains at Good News Jail & Prison Ministry | RRJ Invitation | February 3, 2014 |
| 47b | Non-Denominational Chaplain Services Contract between Riverside Regional Jail | 2015 Good News Contract | January 1, 2015 |

| # | Exhibit Title | Short Name | Date |
|---|---|---|---|
| | Authority and Good News Jail and Prison Ministry | | |
| A | Deposition of Mitchell Young (Plaintiff) | Young Dep. | July 22, 2019 |
| B | Deposition of Domonick Robertson (Plaintiff) | Robertson Dep. | July 9, 2019 |
| C | Deposition of Desmond Horton (Plaintiff) | Horton Dep. | July 3, 2019 |
| D | Deposition of William Thomas Wilson, 30(b)(6) designee of Defendant Riverside Regional Jail Authority | Wilson Dep. | August 5, 2019 |
| E | Deposition of Riverside Regional Jail Superintendent Jeffrey L. Newton (Defendant) | Newton Dep. | July 11, 2019 |
| F | Deposition of Captain Donald Langley (Defendant) | Langley Dep. | July 1, 2019 |
| G | Deposition of Tyone Keith (Defendant) | Keith Dep. | July 1, 2019 |
| H | Deposition of Jennifer Sowers, 30(b)(6) designee of non-party Trinity Services Group, Inc. | Sowers Dep. | July 16, 2019 |
| I | Deposition of Captain Laura Gray (Defendant) | Gray Dep. | July 2, 2019 |
| J | Deposition of Chaplain Joe Collins (Defendant) | Collins Dep. | July 12, 2019 |
| K | Deposition of Michael Phillips, 30(b)(6) designee of non-party Trinity Services Group, Inc. | Phillips Dep. | July 16, 2019 |
| L | Deposition of Jonathan Evans, 30(b)(6) designee of non-party Good News Jail & Prison Ministry | Evans Dep. | August 6, 2019 |

# INTRODUCTION

In 2018 the Riverside Regional Jail Authority chose to endorse Christianity and eschew Islam. At the behest of Superintendent Newton, Lead Chaplain Collins hand-picked a group of his favorite inmates from a prior Bible study, evaluated their commitment to Biblical principles, and then religiously-segregated them into an exclusive housing pod. There the inmates enjoyed single-bed cells, a microwave, and other special privileges – while receiving a stack of new Christian curriculum materials and Bible classes each day. Dubbed the "God Pod" by the general inmate population, the Riverside Regional Jail Authority shut down this biblical-based housing unit shortly after this lawsuit was filed.

Riverside Regional Jail's "God Pod" did not occur in isolation. From 2015 to June 2019, the Riverside Regional Jail Authority delegated its religious functions to Defendant Chaplain Collins pursuant to a chaplaincy services contract with Good News Jail & Prison Ministry. All inmates' religion-related requests and grievances passed first through the Good News chaplain. Access to religious meals required inmates to "pass" an intrusive religious test. For Muslims, their access to religious materials and services was often curtailed. And during the Islamic holy month of Ramadan, neither Riverside Regional Jail staff nor contracted food service staff could be bothered to ensure Muslim inmates received their meals during religiously-prescribed times.

In the nine months since Plaintiffs filed this action, Defendants have made many changes. Defendants disbanded the God Pod and revoked the Religious Questionnaire. Riverside Regional Jail Authority declined to renew the chaplaincy services contract with Good News Jail & Prison Ministry; Defendant Chaplain Collins no longer works on site. Riverside Regional Jail Authority has hired a new Superintendent and swapped in a new Programs Manager; non-party Trinity Services Group has also fired Defendant Tyone Keith.

But these remedial measures have neither solved all of the Riverside Regional Jail Authority's

religious accommodation problems, nor mitigated the threat of Defendants' continuing infringements, nor compensated for Plaintiffs' past harms. Ramadan meals continued to be delivered late in 2019, and Muslim's religious requests continue to be disregarded. Especially with a new Superintendent, a new Chief of Programs, a new Chief of Security, a new Food Services Supervisor, and a new Chaplain in place, this Court's intervention is necessary to ensure that Riverside Regional Jail Authority's history of preferring Christianity while disfavoring Islam neither repeats itself nor continues.

The Court should enter summary judgment as to liability against all Defendants and enjoin any continuing violations of the Religious Land Use and Institutionalized Persons Act and the U.S. Constitution. Once declaratory and injunctive relief is entered, the Court should conduct further proceedings so as to determine Plaintiffs' damages, costs, and attorney's fees.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Plaintiffs' Faith and Religious Practice While Incarcerated at Riverside Regional Jail

1.      Plaintiff Mitchell Young has been a Muslim for more than 13 years. He practices his faith by, e.g., fasting during Ramadan, praying five times a day, and attending Jummah. During 2018, Young was an inmate at Riverside Regional Jail in Unit 3E. Mr. Young is currently incarcerated at Deep Meadow Correctional Center, 3500 Woods Way, State Farm, VA 23160. MSJ Ex. A, Young Dep. at 7:24-8:16, 9:5-7, 35:3-7, 45:4-11.

2.      In order to be added to the common fare (i.e. religious) diet after arriving at Riverside Regional Jail, Plaintiff Mitchell Young took a Religious Questionnaire administered by the Chaplain's Office and Program's Office. Chaplain Collins and Chief of Programs Captain Gray graded the questionnaire and approved Plaintiff Young for a common fare diet. MSJ Ex. A, Young Dep. at 39:15-42:5, 174:8-175:1; MSJ Ex. 33, Young Questionnaire.

3.      Mr. Young struggled to obtain Islamic materials at Riverside Regional Jail. MSJ Ex. A, Young Dep. at 125:1-129:24, 162:9-166:10, 171:6-171:23.

4. Mr. Young grieved Riverside Regional Jail's failures to support his Islamic faith. Defendants did not respond to or retain copies of all of these grievances, some of which are missing. Mr. Young's grievances included repeated complaints about late and cold meals during Ramadan 2018. They also included complaints about the disparities in religious classes between Christians and Muslims. MSJ Ex. A, Young Dep. at 63:22-25, 108:21-109:15; MSJ Ex. 34, Young Grievances; MSJ Ex. 39, Young May 22 Ramadan Grievance;

5. Due to Riverside Regional Jail's failure to provide timely or sufficient food while he religiously fasted during Ramadan 2018, Young lost weight and experienced other health consequences. MSJ Ex. A, Young Dep. at 134:17-135:5.

6. Plaintiff Dominick Robertson has been a Muslim since the Spring of 2018. He practices his faith by, e.g., fasting during Ramadan, praying five times a day, and attending Jummah. During 2018 Plaintiff Dominick Robertson was an inmate at Riverside Regional Jail in Unit 3E. Mr. Robertson is currently incarcerated at Chesterfield County Jail, 6900 Mimms Dr, Chesterfield, VA 23832. MSJ Ex. B, Robertson Dep. at 14:14-17, 20:4-25, 26:16-27:6, 27:21-30:5.

7. In order to be added to the common fare (i.e. religious) diet after arriving at Riverside Regional Jail and starting to practice Islam, Plaintiff Dominick Robertson in May 2018 took the Religious Questionnaire administered by the Chaplain's Office and Program's Office. Chaplain Collins concluded Plaintiff Robertson did not pass the test, and Chief of Programs Captain Gray denied Mr. Robertson access to common fare meals. Shortly after this lawsuit was filed, Defendants re-administered the test and this time concluded he passed and approved his common fare diet. However, Mr. Robertson was released from the facility days later, and never actually received common fare meals. MSJ Exs. 11, 20, Robertson Questionnaires; MSJ Ex. B, Robertson Dep. at 21:10-25:11; MSJ Ex. I, Gray Dep. at 83:15-85:9.

8. Mr. Robertson grieved Riverside Regional Jail's failures to support his Islamic faith.

Defendants did not respond to or retain copies of all of these grievances. Mr. Robertson's grievances included repeated complaints about late and cold meals during Ramadan 2018. They also included complaints about the disparities in religious classes between Christians and Muslims. MSJ Ex. B, Robertson Dep. at 34:7-37:1; MSJ Ex. 21-21b, Robertson Grievances.

9.      Due to Riverside Regional Jail's failure to provide timely or sufficient food while he religiously fasted during Ramadan 2018, Robertson lost weight and experienced other health consequences. MSJ Ex. B, Robertson Dep. at 56:9-58:19.

10.     Plaintiff Desmond Horton has been a Muslim his entire life. He practices his faith by, e.g., fasting during Ramadan, praying five times a day, studying the Qur'an, and attending Jummah. Horton has resided as an inmate at Riverside Regional Jail in Unit 3E since 2018. MSJ Ex. C, Horton Dep. at 8:20-24, 9:6-7, 23:10-12, 33:7-35:2, 36:19-39:14.

11.     In order to be added to the common fare (i.e. religious) diet at Riverside Regional Jail, Plaintiff Horton took a Religious Questionnaire administered by the Chaplain's Office and Program's Office. Chaplain Collins and Chief of Programs Captain Gray graded the questionnaire and approved Plaintiff Horton for a common fare diet. MSJ Ex. C, Horton Dep. at 27:19-28:13; MSJ Ex. 15, Horton Questionnaire.

12.     Mr. Horton has struggled to obtain Islamic materials at Riverside Regional Jail. MSJ Ex. C, Horton Dep. at 85:25-88:22.

13.     Mr. Horton grieved Riverside Regional Jail's failures to support his Islamic faith. Defendants did not respond to or retain copies of all of these grievances, many of which are missing. Mr. Horton's grievances included repeated complaints about late and cold meals during Ramadan 2018. They also included complaints about the disparities in religious classes between Christians and Muslims. MSJ Ex. C, Horton Dep. at 47:17-59:10, 82:1-6; MSJ Ex. 16, Horton Ramadan Grievances; MSJ Ex. 17, Horton Classes Grievances; MSJ Ex. 40, Horton June 11 Ramadan Grievance; MSJ Ex.

41, Horton May 20 Ramadan Grievance; MSJ Ex. 42, Horton June 19 Ramadan Grievance Appeal.

14.     Due to Riverside Regional Jail's failure to provide timely or sufficient food while he religiously fasted during Ramadan 2018, Horton lost weight and experienced other health consequences.  MSJ Ex. C, Horton Dep. at 92:9-94:21.

15.     Mr. Horton experienced similar problems with untimely meals at Riverside Regional Jail during Ramadan 2019.  MSJ Ex. C, Horton Dep. at 63:6-64:11, 66:8-68:3.

16.     Plaintiff Chris Mayo was released from Riverside Regional Jail in early 2019.  Until August 27, 2019, his location was unknown.  He has moved to Miami, Florida.  Plaintiffs' counsel will confer with Defendants' counsel regarding how to proceed with respect to Mr. Mayo.

**B.      Defendant Riverside Regional Jail Authority**

17.     Defendant Riverside Regional Jail Authority operates Riverside Regional Jail which is located at 500 Folar Trail, N Prince George, VA 23860.  MSJ Ex. D, Wilson Dep. at 13:17-19.

18.     Defendant Jeffery L. Newton was the Superintendent of Riverside Regional Jail from August 1, 2011 to November 30, 2018, when he retired.  MSJ Ex. E, Newton Dep. at 9:11-14, 206:11-15.

19.     Riverside Regional Jail provides a grievance process for inmates.  Inmate are supposed to, first, verbally raise their concern.  If the concern cannot be resolved verbally, then the inmate must request a paper grievance form.  Correctional staff then assigns a grievance control number and issues a paper grievance form to the inmate.  After writing down the issue, the inmate must turn in their only paper copy to their pod officer.  If the inmate does not receive a satisfactory response to their grievance, they may appeal.  The first appeal goes to the unit supervisor.  The second appeal goes to the appropriate division chief or designated assistant.  The second-level appeal reflects the end of the grievance process.  MSJ Ex. F, Langley Dep. at 31:8-32:1, 34:16-36:19, 38:21-40:3, 41:5-17; MSJ Ex. 6, Grievance Policy at Chapters 1-2.

20.     Riverside Regional Jail Authority sometimes fails to have its staff sign off on grievance responses or return grievances forms to inmates.  MSJ Ex. D, Wilson Dep. at 207:5-210:22; 212:11-213:22, 217:6-12, 220:21-221:19 (discussing MSJ Exs. 39-42, Young and Horton Ramadan Grievances).

**C.      Riverside Regional Jail Authority's Relationship with Trinity Services Group, Inc. and Food Services Director Tyone Keith**

21.     Defendant Captain Donald Langley is an employee of Riverside Regional Jail.  At the time of the events alleged in the Second Amended Complaint, Captain Langley worked as Chief of Security.  One of Defendant Langley's responsibilities as Chief of Security included ensuring that the Riverside Regional Jail Authority's third-party food service contract with Trinity Services Group, Inc. was followed.   On June 1, 2019 Captain Langley's position at Riverside changed to Chief of Community Corrections.  MSJ Ex. F, Langley Dep. at 15:22-16:6, 19:2-4, 23:3-7, 27:14-28:20, 48:3-8.

22.     Defendant Tyone Keith was the Food Services Director at Riverside Regional Jail from March 2017 to March 2019.  Mr. Keith was employed by a third-party, Trinity Services Group, Inc.  Trinity Services Group, Inc. terminated Mr. Keith's employment in March 2019.  Mr. Keith was terminated for fudging food inventory records.  MSJ Ex. G, Keith Dep. at 21:18-25:12.

23.     Trinity Services Group, Inc. is a non-party.   Riverside Regional Jail Authority has contracted with Trinity Services Group, Inc. for food service since 2011.  The contract requires Trinity to provide each inmate with an average of 2900 nutritionally-balanced calories per day. Across all of its facilities, Trinity will not enter into food services contracts which provides less than an average of 2500 calories per day.  Trinity prepares and certifies the standard and common fare menus used at Riverside Regional Jail.  MSJ Ex. D, Wilson Dep. at 85:16-87, 226:19-230:3, 231:7-11; MSJ Ex. E, Newton Dep. at 188:8-13; MSJ Ex. H, Sowers Dep. at 17:5-8, 28:11-30:1, 21:18-22:16, 24:14-22, 26:9-16, 35:20-36:7, 37:8-22, 38:13-39:3, 39:11-13, 40:13-42:3, 54:21-55:3, 56:3-12, 57:14-58:6, 58:20-59:1, 61:12-62:3; MSJ Ex. 32, 2011 Trinity Contract; MSJ Ex. 30, 2018 Trinity Contract; MSJ Ex. 1, RRJ

2018 Menus.

24. Riverside Regional Jail Authority policy provides for special medical and religious diets. Although edits to the common fare (i.e. religious) diet policy may be pending, the current version of the special diets policy has been in effect since February 14, 2017. MSJ Ex. 10, Diet Policy; MSJ Ex. I, Gray Dep. at 64:2-65:22.

25. The Common Fare menu is the only religious diet offered at Riverside Regional Jail. The Common Fare menu contains no pork, beef, chicken, or other meat products, instead using soy-based meat substitutes. The Common Fare menu may contain fish, including tuna. The Common Fare menu may also contain other animal-based proteins, such as milk and eggs. "Common Fare" menus at Riverside Regional Jail follow Virginia Department of Corrections guidelines for religious diets. *See* MSJ Ex. 1, RRJ 2018 Menus; MSJ Ex. 10, Diet Policy; MSJ Ex. H, Sowers Dep. at 42:8-43:2, 43:20-44:7, 44:11-45:5, 50:4-19; 54:17-20; MSJ Ex. G, Keith Dep. at 49:2-50:10, 51:2-52:6, 77:18-78:9; MSJ Ex. I, Gray Dep. at 63:3-10.

26. Inmates at Riverside Regional Jail may initiate their request to be placed on the common fare menu through the Chaplain's Office. Throughout 2018, inmates seeking access to common fare meals were required to take and pass a Religious Questionnaire. Programs Officer Meredith, an employee of Riverside Regional Jail, provided administrative support to the Chaplains' Office related to administering inmates' requests for common fare. MSJ Exs. 11, 15, 20, 33, Plaintiffs' Questionnaires, MSJ Ex. 12, Religious Scoring Key; MSJ Ex. I, Gray Dep. at 59:20-60:6, 62:20-22, 63:11-64:1, 67:2-20, 68:13-69:10, 77:5-7, 90:3-8; MSJ Ex. G, Keith Dep. at 58:8-59:3.

27. Riverside Regional Jail no longer uses the Religious Diet Interview Questionnaire. Captain Gray decided to stop using it because "it was confusing" and "I just couldn't tell – determine how a number score could tell somebody what diet they wanted to eat." *See* MSJ Ex. I, Gray Dep. at 89:22-14. Under the new common fare sign-up policy, inmates still request a religious diet through

the chaplain's office, but inmates only sign an agreement to follow their faith and do not take a test. The chaplain is limited in his ability to disapprove the requests. *See* MSJ Ex. I, Gray Dep. at 93:22-94:11, 96:4-15.

### D. Riverside Regional Jail Fails to Provide Fasting Muslim Inmates Pre-Dawn Meals During Ramadan

28.     Ramadan is a time of religious observance by practicing Muslims. During Ramadan, practicing Muslims fast from dawn to sunset. Muslims cannot eat outside of those times. MSJ Ex. J, Collins Dep. at 291:3-9; MSJ Ex. F, Langley Dep. at 49:12-50:11; MSJ Ex. I, Gray Dep. at 103:11-104:10; MSJ Ex. E, Newton Dep. at 201:11-13; MSJ Ex. H, Sowers Dep. at 67:10-14; MSJ Ex. G, Keith Dep. at 78:12-79:7, 96:16-19; MSJ Ex. D, Wilson Dep. at 91:1-8, 91:22-92:5.

29.     In 2018, Ramadan commenced on May 16 and ended on approximately June 15. On May 3, 2018, Chaplain Collins sent out an email to jail and kitchen staff regarding Ramadan. The email set forth the pre-dawn and post-sunset times when meals needed to be served to fasting inmates. The Chaplain's Office also provided the kitchen and Riverside Regional Jail Authority staff with a Ramadan Roster, identifying participating inmates, their housing units, and any special diets. MSJ Ex. 2, Ramadan List; MSJ Ex. 3, Ramadan Email; MSJ Ex. J, Collins Dep. at 287:1-15; MSJ Ex. G, Keith Dep. at 79:8-14, 89:12-15, 93:22-96:15; MSJ Ex. F, Langley Dep. at 58:7-59:18; MSJ Ex. D, Wilson Dep. at 96:16-98:2, 100:20-101:4; MSJ Ex. I, Gray Dep. at 105:8-16, 107:21-4.

30.     Riverside Regional Jail policy is that inmates participating in Ramadan at Riverside Regional Jail should receive a cold breakfast meal before dawn. This is the same breakfast non-fasting inmates receive, but delivered earlier. Inmates participating in Ramadan do not receive a hot lunch because they are fasting during lunch time. Fasting inmates should receive a hot dinner meal after sunset. This is the same hot dinner meal non-fasting inmates receive, but delivered later. Per policy, inmates participating in Ramadan also receive a cold bagged "lunch" at the same time as the hot dinner to replace the lunch they did not receive due to their fast. MSJ Ex. 3, Ramadan Email; MSJ Ex. E,

Newton Dep. at 200:8-22; MSJ Ex. H, Sowers Dep. at 66:15-17, 68:2-69:9; MSJ Ex. G, Keith Dep. at 72:19-73:18, 100:5-102:9, 102:19-105:6, 105:19-107:4; MSJ Ex. D, Wilson Dep. at 101:7-102:12.

31.     Ordinarily and not during Ramadan, Trinity Services Group, Inc. prepares all meals in the kitchen.  Common Fare meals are prepared in a separate kitchen than regular meals.  Kitchen workers place prepared meals on trays, which are color-coded to designate which menu the meal is from.  The color-coded trays are then placed on carts, and they are wheeled to individual units for distribution to inmates. Ordinarily, kitchen workers wheel meal trays to the entrance of units. Riverside Regional Jail Authority staff then pick up the carts and wheel them to individual pods. Inmate workers then distribute the meals within the pods.  MSJ Ex. G, Keith Dep. at 60:10-62:3, 64:18-68:1, 54:16-55:22, 64:18-68:1; MSJ Ex. E, Newton Dep. at 202:12-17.

32.     During Ramadan for breakfast, the procedure is altered.  Trinity's kitchen workers prepare breakfast meals the night before and leave them in a refrigerator.  No Trinity Food Services staff or workers is on duty before dawn to deliver the meals to the units.  So instead, Riverside Regional Jail custody staff employees fetch the meals from the kitchen and wheel them all the way to each pod's entrance.  Pod officers then coordinate the distribution of Ramadan breakfasts within the pods.  MSJ Ex. G, Keith Dep. at 80:19-81:7; 86:22-89:11, 90:5-92:9, 96:20-99:21, 137:4-13; MSJ Ex. E, Newton Dep. at 202:12-203:11, 203:14-17; MSJ Ex. D, Wilson Dep. at 96:4-15, 99:12-15.

33.     Neither Riverside Regional Jail nor Trinity Services Group, Inc. logs the time that Ramadan meals leave the kitchen, nor when Ramadan meals are physically delivered to inmates.  For breakfast, the last time Trinity logs is when the final Ramadan breakfast tray is prepared and placed in the kitchen refrigerator the night before.  MSJ Ex. G, Keith Dep. at 69:1-8, 70:5-19 89:12-90:9, 99:22-100:4; MSJ Ex. K, Phillips Dep. at 81:16-82:7; MSJ Ex. D, Wilson Dep. at 224:2-10.

34.     On multiple occasions during Ramadan 2018, Muslim inmates received their breakfast meals late, including after dawn.  Although addressing untimely meals falls within his responsibility,

9

Captain Langley took no action during Ramadan 2018 to ensure that breakfast meals were timely served to Muslim inmates. MSJ Ex. D, Wilson Dep. at 88:5-89:1, 89:22-90:22, 92:7-15; 93:4-94:7, 109:13-110:19; MSJ Ex. J, Collins Dep. at 288:11-289:19, 291:13-19, 293:13-19, 297:19-299:1, 302:7-18; MSJ Ex. G, Keith Dep. at 90:10-91:4, 141:6-17, 143:4-13; MSJ Ex. F, Langley Dep. at 48:18-22, 66:12-69:6, 72:4-7, 77:1-14; MSJ Exs. 16, 21, 34, 39, 40, 41, 42, Plaintiffs' Ramadan Grievances.

35. Regularly missing meals, including breakfast and the approximately 600 calories Trinity provides, can cause weight loss and adversely affect health and nutrition. MSJ Ex. H, Sowers Dep. at 64:18-65:8, 77:19-22, 78:4-17, 79:8-13; MSJ Ex. A, Young Dep. at 134:17-135:5; MSJ Ex. B, Robertson Dep. at 56:9-58:19; MSJ Ex. C, Horton Dep. at 92:9-94:21.

### E. Riverside Regional Jail Authority's Relationship with Good News Jail & Prison Ministry and Chaplain Collins

36. Defendant Joe Collins was the Lead Chaplain at Riverside Regional Jail from 2015 to June 30, 2019. Mr. Collins is employed by a third-party, non-profit organization, Good News Jail & Prison Ministry. Chaplain Collins has worked for Good News since 1997. Prior to his employment with Good News, Chaplain Collins was a Southern Baptist pastor. MSJ Ex. J, Collins Dep. at 18:16-18, 29:15-21, 30:9-13, 53:19-54:6, 56:19-57:13; 163:1-3; MSJ Ex. L, Evans Dep. at 17:12-18,

37. Good News Jail & Prison Ministry is a non-party. It is a 501(c)(3) non-profit headquartered in Henrico, Virginia and classified as a church. Its organizational vision is "to reach every inmate in the world with the Good News of Jesus Christ that they might become growing disciples." The organization's name refers to "The good news is that Jesus Christ died for sinners and he is the key, we believe, to man being reconciled to God." MSJ Ex. L, Evans Dep. at 14:10-13, 32:6-13, 105:22-106:3, 110:17-111:17, 113:11-114:7, 115:4-7, 118:15-119:14, 142:8-143:7.

38. Good News Jail & Prison Ministry maintains a website at www.goodnewsjail.org. On that website, Good News Jail & Prison Ministry indicates that it has achieved over 2.1 million "decisions for Christ" and 1.7 million "Bible classes taught." The website states that gifts to this

organization "help Good News bring the Gospel of Jesus Christ to prisoners."  *See* Ex. J, Collins Dep. at 281:12-282:1; MSJ Ex. L, Evans Dep. at 135:20-136:17; MSJ Ex. 45, Good News Homepage.

39.     On behalf of Riverside Regional Jail Authority, Superintendent Newton in 2014 contacted Good News Jail & Prison Ministry in order to discuss contracting with them to provide chaplaincy services to the jail's inmates. Superintendent Newton reached out to Good News Jail & Prison Ministry because he had prior positive experience with their chaplaincy services at another facility. MSJ Ex. E, Newton Dep. at 162:8-163:20, 167:20-168:4; MSJ Ex. L, Evans Dep. at 41:1-4; MSJ Ex. D, Wilson Dep. at 19:20-20:18, 31:20-32:10, 226:19-230:3, 231:7-11; MSJ Ex. 47a, RRJ Invitation.

40.     Prior to contracting with Good News Prison & Jail Ministry in 2015, Riverside Regional Jail Authority employed its own chaplain. Superintendent Newton in 2015 entered into a contract with Good News Jail & Prison Ministry.  The contract was repeatedly renewed on near-identical terms from 2015 until June 30, 2019. When the operative contract expired on June 30, 2019, new RRJ Superintendent Carmen DeSadier decided to not renew it. MSJ Ex. 47b, 2015 Good News Contract; MSJ Ex. 7, 2018 Good News Contract; MSJ Ex. E, Newton Dep. at 126:9-127:22; MSJ Ex. D, Wilson Dep. at 27:1-27:20, 37:2-8, 202:22-203:4; MSJ Ex. I, Gray Dep. at 33:12-34:9; MSJ Ex. L, Evans Dep. at 158:1-159:2, 161:2-162:2, 168:11-169:20, 176:5-18.

41.     Defendant Captain Laura Gray is an employee of Riverside Regional Jail.  At the time of the events alleged in the Second Amended Complaint, Captain Gray worked as Chief of Programs. On June 1, 2019 Captain Gray's position at RRJ changed to Acting Director of Operations. As Chief of Programs, Captain Gray was responsible for overseeing the Riverside Regional Jail Authority's contract with Good News Jail & Prison Ministry for chaplaincy services. The Chief of Programs received grievance appeals regarding religious materials, services, and meals.  MSJ Ex. I, Gray Dep. at 16:12-17, 17:21-18:4, 20:12-17, 21:4-22:1, 36:4-12, 44:22-46:1; MSJ Ex. L, Evans Dep. at 161:9-162:2.

42.     The Riverside Regional Jail Authority delegated to Mr. Collins the authority to process inmate grievances related to religious accommodations.  Services provided by the Chaplain's Office include screening religious volunteers; coordinating religious volunteers; maintain the approved religious volunteer list; scheduling religious services, classes, and events; responding to inmate requests for religious literature or other religious materials; responding to inmate requests to change their religious designations; and, reviewing inmate requests to receive religious diets. The Chief of Programs did not intervene in how Chaplain Collins fulfilled his chaplain duties.  MSJ Ex. 7, 2018 Good News Contract; MSJ Ex. 9, Inmate Programs Summary; MSJ Ex. J, Collins Dep. at 282:2-283:2, 283:7-13, 302:20-303:6, 304:20-305:3; MSJ Ex. D, Wilson Dep. at 21:2-23:5, 25:9-11, 131:17-132:3, 132:4-21; MSJ Ex. I, Gray Dep. at 28:22-30:3; 32:8-21, 38:14-41:9, 46:21-47:2, 53:2-54:14, 55:2-5.

**F.      Riverside Regional Jail Introduces Religious Segregation**

43.     The Life Learning Program was a program for inmates at Riverside Regional Jail from approximately October 2018 to December 2018.  Inmates colloquially referred to the Life Learning Program as the "God Pod."  The program was disbanded after the filing of this lawsuit upon the advice of counsel.  MSJ Ex. J, Collins Dep. at 163:4-6, 252:19-253:7; MSJ Ex. I, Gray Dep. at 113:11-13, 130:17-22; MSJ Ex. D, Wilson Dep. at 75:5-76:7, 77:7-11, 80:10-16; MSJ Ex. A, Young Dep. at 116:21-117:7; MSJ Ex. B, Robertson Dep. at 42:23-43:17; MSJ Ex. C, Horton Dep. at 69:4-13, 69:22-25.

44.     Chaplain Collins submitted Life Learning Program documentation to Superintendent Newton at Riverside Regional Jail in 2016.  Superintendent Newton subsequently approved the Life Learning Program.  MSJ Ex. 36, Life Learning Program Proposal; MSJ Ex. E, Newton Dep. at 114:6-10, 113:13-16, 122:9-13; MSJ Ex. I, Gray Dep. at 108:7-19, 112:7-9; MSJ Ex. F, Langley Dep. at 57:1-4; MSJ Ex. D, Wilson Dep. at 57:3-7, 57:14-16, 140:5-141:13.

45.     Superintendent Newton and Chaplain Collins fundraised together for Good News Jail & Prison Ministry and the Life Learning Program at Monumental Baptist Church. Superintendent Newton and Chaplain Collins regularly fundraised at other churches in the Richmond area to support the chaplaincy services at Riverside Regional Jail. MSJ Ex. J, Collins Dep. at 166:1-18, 169:12-170:8, 190:16-192:9, 194:17-22, 199:5-201:16, 209:7-13, 209:21-211:19; MSJ Ex. L, Evans Dep. at 22:5-10.

46.     During its operation, the Life Learning Program had dedicated program and living space in a pod in Unit 5-C at Riverside Regional Jail. Unlike non-program housing units, the Life Learning Program had a microwave. Initial participants in the program also received their own single-bunk cells. MSJ Ex. I, Gray Dep. at 114:3-6; MSJ Ex. E, Newton Dep. at 119:1-18, 245:5-246:6, 246:21-247:10, 261:20-263:5, 263:15-19; MSJ Ex. D, Wilson Dep. at 162:14-163:10, 164:1-9, 164:22-165:2.

47.     Superintendent Newton delegated the authority for Life Learning Program applications to the Chaplain. Chaplain Collins modeled the application for the Life Learning Program off of one he had used previously at another prison. Chaplain Collins hand-picked the first group of inmate participants in the Life Learning Program by inviting inmates to apply who previously participated in a trauma healing Bible study. Chaplain Collins and his staff chose all of the Life Learning Program participants following application interviews. LLP participants were subject to final approval by Riverside Regional Jail. *See* MSJ Ex. E, Newton Dep. at 120:8-121:1, 249:17-20, 225:4-12, 226:2-12; MSJ Ex. J, Collins Dep. at 230:4-231:14, 266:5-8, 234:2-10, 234:17-237:1, 237:4-239:21, 247:16-249:5, 225:16-226:15; MSJ Ex. D, Wilson Dep. at 232:8-17; MSJ Ex. 13, LLP Flier; MSJ Ex. 37, LLP Application Process; MSJ Exs. 22, 25, LLP Applications.

48.     Riverside Regional Jail Authority permitted Chaplain Collins to determine the Life Learning Program curriculum. The Life Learning Program curriculum was based on Biblical principles. That curriculum included completion of a Good News Bible Correspondence Course and

the study of biblical-inspired books including: "Boundaries: When to Say Yes, How to Say No to Take Control of Your Life" by Dr. Henry Cloud and Dr. John Townsend and "The Peacemaker: A Biblical Guide to Resolving Personal Conflict" by Ken Sande. MSJ Ex. 36, Life Learning Program Proposal; MSJ Ex. 46, LLP Curriculum Receipts; MSJ Ex. L, Evans Dep. at 70:4-9, 73:5-10, 75:3-10, 76:3-18, 76:19-77:3; MSJ Ex. D, Wilson Dep. at 58:2-8, 59:21-60:1, 84:17-21; MSJ Ex. J, Collins Dep. at 223:22-225:1, 249:16-18, 250:5-251:2; MSJ Ex. E, Newton Dep. at 227:7-13, 228:12-17, 230:20-231:4.

49.     Chaplain Collins only used the Bible and biblical-based texts in the Life Learning Program, and not any other religious texts such as the Qur'an. This is because "we tried to formulate the curriculum in the Life Learning Program to appeal to the broadest audience." No Riverside Regional Jail programs or pods have ever existed for the study of Islamic principles. MSJ Ex. D, Wilson Dep. at 175:2-4; MSJ Ex. J, Collins Dep. at 68:16-17, 72:17-73:8, 75:1-77:20, 84:6-14, 86:3-87:9, 88:21-89:15, 114:1-19, 156:20-157:3, 159:6-17.

50.     Chaplain Collins tracked the number of professions of faith and recommitments to Christianity, in his capacity as a Christian chaplain and as an employee of Good News Jail & Prison Ministry. Good News Jail & Prison Ministry requires its chaplains to report on inmates' "Decisions for Christ" and "Bible Classes Taught" for use both as an internal performance tool and as an external fundraising tool. Chaplain Collins did not track any professions of faith or recommitments to Islam. MSJ Ex. J, Collins Dep. 272:22-27-274:14, 275:3-10; MSJ Ex. L, Evans Dep. at 24:3-5, 29:7-31:3, 133:6-135:17; MSJ Ex. 28, Chaplain Talley Sheet, MSJ Ex. 45, Good News Homepage.

51.     RRJ strives to provide an opportunity for Muslim inmates to attend weekly Jummah services, but does not provide and has cancelled Taleem classes. Riverside Regional Jail provides weekly worship services and Bible studies for Christian inmates. The Life Learning Program provided nearly half as many Christian classes in the two months of its existence as the Muslim population received in the entire year. MSJ Ex. 28, Chaplain Talley Sheet at 36; MSJ Ex. D, Wilson Dep. at

175:2-4; MSJ Ex. J, Collins Dep. at 68:16-17, 72:17-73:8, 75:1-77:20, 84:6-14, 86:3-87:9, 88:21-89:15, 114:6-19, 156:20-157:3, 159:6-17; MSJ Exs. 17, 21, 34, Plaintiffs' religious services grievances.

## ARGUMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no material dispute that Riverside Regional Jail Authority acts both through its own Defendant employees and through contracts with private entities and Defendants to whom it delegates traditional state functions.[2] There is no material dispute that Riverside Regional Jail Authority failed to accommodate Plaintiffs' religious practice of fasting from dawn to sunset during Ramadan 2018. There is no material dispute that Riverside Regional Jail Authority hired a Christian ministry to run its Chaplain's Office, convert its inmates, and then establish a segregated Christian housing pod. Based on these facts alone, summary judgment finding liability is appropriate. Defendants' actions violate, at a minimum, the Religious Land Use and Institutionalized Persons Act and the First and Fourteenth Amendments to the U.S. Constitution.

## I. DEFENDANTS FAILED TO PROVIDE MUSLIM INMATES WITH ADEQUATE NUTRITION DURING RAMADAN

### A. Defendants' Failure to Provide Timely and Sufficient Meals to Fasting Muslim Inmates During Ramadan Violates RLUIPA

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") limits the ability of state prisons to impose substantial burdens on the religious exercise of inmates. 42 U.S.C. § 2000cc-1. Congress enacted RLUIPA … in order to provide very broad protection for religious liberty" to prisoners. *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015). "Inmates . . . have the right to be provided with

---

[2] When state prisons contract with private parties to fulfill prison functions the contractors act under color of state law for purposes of 42 U.S.C. § 1983. *See, e.g., DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999) (general principle); *Coleman v. Aramark*, 31. F. App'x 808, 809 (4th Cir. 2002) (assuming contracted prison food service provider is § 1983 actor); *Paz v. Weir*, 137 F. Supp. 2d 782, 805 (S.D. Tex. 2001) (recognizing contracted prison chaplain as § 1983 actor).

food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). Courts have "repeatedly held that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden," on religious exercise, particularly during Ramadan. *See, e.g., Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016) (collecting cases and finding a substantial burden where prison denied inmate Ramadan meals for two days). Courts have also recognized that forcing prisoners to pay for or procure their own religiously-compliant food is a substantial burden, which the Government can alleviate by providing religiously compliant food for free. *See, e.g., Moussazadeh v. Tex. Dep't of Criminal Justice*, 703 F.3d 781, 796 (5th Cir. 2012).

Defendants Riverside Regional Jail Authority, former Superintendent Jeffrey Newton, former contracted Food Services Director Tyone Keith, and former RRJ Chief of Security Captain Donald Langley each imposed substantial burdens on Plaintiffs' religious practice of fasting during Ramadan. Each Plaintiff participated in the Ramadan fast at Riverside Regional Jail, and each Plaintiff complained of and grieved late, cold, and insufficient Ramadan meals in 2018. *See* Statement of Facts ("SOF") ¶¶ 4-5, 8-9, 13-14. Plaintiffs could not violate their faith by eating meals delivered after dawn. *See* SOF ¶ 28. Defendants' own investigations corroborated that Ramadan meals, particularly breakfast, were being delivered late and cold. *See* SOF ¶ 34.

But at the time, Defendants did not take the Muslim inmates' late-meals complaints seriously. Defendant Tyone Keith, the private-contracted Food Service Supervisor, would only respond that he would look into the matter – weeks after Plaintiffs' Ramadan meals had been missed. *See* SOF ¶ 34; MSJ Exs. 16, 21, 34, 39, 40, 41, 42, Plaintiffs' Ramadan Grievances. Defendant Captain Langley, the Riverside Regional Jail official tasked with fixing problems in food service, admits he took no action to address the problem. SOF ¶ 34. Meanwhile, Plaintiffs were deprived of at least 600 of their required 2,900 calories in needed nutrition per day, causing weight

loss, dizziness, and other adverse health consequences. *See* SOF ¶ 35. Defendants' actions imposed a substantial burden on Plaintiffs' practice of Ramadan. Plaintiff Desmond Horton, who continues to be incarcerated at Riverside Regional Jail, experienced comparable problems with untimely meals during Ramadan 2019. *See* SOF ¶ 15.[3]

Defendants cannot supply a compelling governmental interest for their failure to provide timely, nutritious meals to Plaintiffs and other Muslim inmates observing Ramadan. Defendants have no compelling interest in Muslim prisoner malnutrition. Nor do Defendants have a compelling interest related to costs or other facility logistics. Defendants admit that Riverside Regional Jail's Ramadan menu is identical to their normal menu, just time-shifted, and that there is no operational problem with delivering meals timely. *See* SOF ¶¶ 29-30.

Defendants' failures to accommodate fasting inmates violated their own policies. *See* SOF ¶¶ 29-30; MSJ Ex. 3, Ramadan Email. Defendant Chaplain Collins had specifically instructed senior Riverside Regional Jail Authority staff and the Food Service Supervisor regarding the religiously-permissible times fasting Muslims could eat in advance of Ramadan. *See id.* Yet Defendant Keith's staff did not report early for shifts in order to accommodate pre-dawn breakfast. SOF ¶ 32. Defendant Riverside Regional Jail Authority's staff was supposed to distribute breakfast during Ramadan instead, but they failed to do so timely. SOF ¶ 34. Neither Riverside Regional Jail Authority nor Defendant Keith's contracted employer, Trinity Food Services Inc., bothered to log the times Ramadan meals either left the kitchen or were actually delivered to fasting Muslim inmates. SOF ¶ 33.

Defendants' admitted failures to provide timely and adequate meals during Ramadan to fasting Muslim inmates violate RLUIPA. SOF ¶ 34. This Court should issue declaratory and

---

[3] To the extent Defendants argue mootness as to any of Plaintiffs' claims for relief, Plaintiffs intend to address continuing harm and voluntary cessation in their Reply.

injunctive relief, requiring Defendants to timely provide fasting Muslim inmates with 2,900 average calories each day during Ramadan, to log the exact times at which meals are delivered, and to provide at least two hot meals as equivalent to what the general population receives. This Court should then order further proceedings regarding 42 U.S.C. § 1988 costs and attorney's fees.

**B.    Defendants' Failure to Provide Timely and Sufficient Meals to Fasting Muslim Inmates During Ramadan Violates the Eighth Amendment**

The Eighth Amendment imposes duties on prison officials to ensure that inmates receive adequate food, clothing, shelter and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "'The unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312 (1986)). When the cumulative impact of conditions of incarceration threatens the physical, mental, and emotional health and well-being of the inmates … the court must conclude that the conditions violate the Constitution." *Rhodes v. Chapman*, 452 U.S. 337, 364 (1981).

The Eighth Amendment is violated when two conditions must be met: (1) an alleged deprivation must be objectively serious, and (2) a prison official must have acted with deliberate indifference to an inmate's serious needs. *Farmer*, 511 U.S. at 834; *see also Rhodes*, 452 U.S. 337. Objectively, those violations that deny "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis for an Eighth Amendment claim. *Wilson v. Seiter*, 501 U.S. 294 (1991). Subjectively, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. In addition, a prison official who was unaware of a substantial risk of harm may nonetheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it. *Id.*

"The Eighth Amendment does not tolerate prison officials' deliberate indifference, in the absence of exigent circumstances, to substantial deprivations of adequate shelter, food, drinking water,

and sanitation." *Johnson v. Lewis*, 217 F.3d 726, 735 (9th Cir. 2000); *accord Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) ("Food that is spoiled and water that is foul is inadequate to maintain health and actionable under the Eighth Amendment"). "The sustained deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose. … [I]nmates rely on prison officials to provide them with adequate sustenance on a daily basis. The repeated and unjustified failure to do so amounts to a serious deprivation." *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009).

Defendants' failure to ensure proper and timely nutrition to Plaintiffs and other fasting Muslim inmates violates the Eighth Amendment. Plaintiffs' testimony and grievances are undisputed that during Ramadan 2018, Defendants delivered breakfast after dawn the majority of the time. SOF ¶ 34. Defendants Collins, Keith, and Langley – and by extension Riverside Regional Jail Authority itself – specifically knew, in real time, about these late-meal complaints and grievances but did nothing to address or correct them. SOF ¶¶ 4-5, 8-9, 13-14, 34. Riverside Regional Jail Authority's subsequent investigation validated Plaintiffs' complaints and concluded that multiple Ramadan meals had, in fact, been delivered late and cold. SOF ¶ 34. Sustained deprivation of meals can cause, and for Plaintiffs did cause, weight loss, dizziness, and other adverse medical experiences. SOF ¶ 35.

Other than attempting to abide by its own policies more diligently, Riverside Regional Jail Authority continued to deliver meals late during Ramadan 2019. SOF ¶ 15. This Court's intervention is necessary to correct Defendants' languor. Both objectively and subjectively, Defendants' Collins, Keith, Langley, Newton, and Riverside Regional Jail Authority's indifference toward and failure to address Plaintiffs' repeated Ramadan complaints violates the Eighth Amendment. This Court should issue declaratory and injunctive relief, requiring Defendants to timely provide fasting Muslim inmates with 2,900 average calories each day during Ramadan, to log the exact times at which meals are delivered, and to provide at least two hot meals as equivalent to

what the general population receives.  This Court should then order further proceedings regarding

42 U.S.C. § 1983 damages and 42 U.S.C. § 1988 costs and attorney's fees.


II.     **RIVERSIDE REGIONAL JAIL VIOLATES THE ESTABLISHMENT CLAUSE BY ENDORSING AND EMPOWERING CHRISTIANITY**

The First Amendment provides: "Congress shall make no law respecting an establishment of

religion." U.S. Const. Amend. I.  The First Amendment equally binds the State of Virginia and its

municipalities, including Defendant Riverside Regional Jail Authority, through the incorporation

doctrine of the Fourteenth Amendment.  *See, e.g., Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515

U.S. 819, 822 (1995).  The Establishment Clause forbids both religious gerrymandering and

delegations of government functions to religious institutions.  *See, e.g., Gillette v. United States*, 401 U.S.

437, 452 (1971); *Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 702, (1994).  Defendant Riverside

Regional Jail Authority, led by Defendants Superintendent Newton and Chaplain Collins, has

religiously segregated inmates, established Christianity, delegated state power to a Christian institution,

disfavored Islam, and subjected inmates to intrusive religious inquiry.  All such actions violate the First

Amendment and must be enjoined.

### A.  The God Pod Officially Preferred Christianity Over Islam and Other Faiths

The Establishment Clause prohibits "one religious denomination [from being] officially

preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).  "When the government acts with

the ostensible and predominant purpose of advancing religion, it violates that central Establishment

Clause value of official religious neutrality, there being no neutrality when the government's ostensible

object is to take sides." *McCreary Cty. v. ACLU*, 545 U.S. 844, 860 (2005). "[T]he Establishment Clause

forbids subtle departures from neutrality, 'religious gerrymanders,' as well as obvious abuses." *Gillette*

*v. United States*, 401 U.S. 437, 452 (1971) (quoting *Walz v. Tax Comm'n*, 397 U.S. 664, 696 (1970).

Similarly, "any covert suppression of particular religious beliefs" is unconstitutional. *See Bowen v. Roy*,

476 U.S. 693, 703 (1986) (plurality opinion).

Riverside Regional Jail Authority's God Pod was explicit in its religious preference for biblical-based learning and Christianity. After RRJ's government-employed chaplain retired in 2013, Superintendent Newton specifically reached out to Good News Jail & Prison Ministry, a Christian church, and invited them to provide a private chaplain for the state facility. SOF ¶ 39; MSJ Ex. 47a, RRJ Invitation. Superintendent Newton reached out to Good News because of prior experiences with their services at other facilities, including Good News's prior operations of Life Learning Programs. SOF ¶ 39. Riverside Regional Jail Authority subsequently entered into a contract with Good News, who provided Defendant Collins as Lead Chaplain. SOF ¶ 40; MSJ Ex. 47b, 2015 Good News Contract. Defendant Collins had previously been a Southern Baptist pastor; while working at the jail he attended Monumental Baptist Church. SOF ¶ 45. Along with Defendant Newton, Chaplain Collins held fundraisers at the church for Good News, where they hyped the Life Learning Program. SOF ¶ 36. Chaplain Collins and his employer Good News considered tracking inmates' conversions and recommitments to Christianity (but no other faiths) to be an important job function. *See* SOF ¶ 50.

Defendants Superintendent Newton and Chaplain Collins worked together to launch the Life Learning Program at Riverside Regional Jail. SOF ¶¶ 44-45. But once begun, Superintendent Newton and Captain Gray gave Chaplain Collins full autonomy over participant applications, selection, and curriculum. SOF ¶ 47-48. Unsurprisingly, Chaplain Collins specially invited his favorite Bible study students to apply to the Life Learning Program first. SOF ¶ 47. The application forms explained the program's "Biblical group setting" and asked inmates "how do you think studying biblical principles might help you change?" MSJ Ex. 22, LLP Application at 1. Chaplain Collins and his staff individually interviewed applicants, asking further questions about their desire to follow biblical principles. SOF ¶ 47; MSJ Ex. 22, LLP Application at 4. Once selected and moved to Unit 5's dedicated program

housing, the full Life Learning Program curriculum relied only on the Bible as scripture, alongside a cache of specially-purchased, Christian-authored, and biblically-based materials. SOF ¶¶ 48-49. In its less than two months of existence, Chaplain Collins documented 61 separate Bible study classes for the LLP participants. SOF ¶ 51; MSJ Ex. 28, Chaplain Talley Sheet at 36.

Nothing in the Life Learning Program relied on Islamic scripture or materials or referenced Muslim principles. SOF ¶ 49. When asked, Defendant Collins defended the program as Christian-focused because it made sense to cater to the religious majority within Riverside. *See id.* While Chaplain Collins sought to convert as many Riverside Regional Jail inmates to Christianity as possible, SOF ¶¶ 37-38, 50, he neglected the needs of Muslim Plaintiffs who struggle to obtain religious classes, services, diets, and other accommodations, SOF ¶¶ 3-4, 8, 12-13, 51.

Religious programs in prisons violate the Establishment Clause when they "unyieldingly weight" the interests of one religious persuasion over others, "differentiate among bona fide faiths," or "confer … privileged status on any particular religious sect." *Cutter v. Wilkinson*, 544 U.S. 709, 720-724 (2005). From its conception to its inception, the Life Learning Program at Riverside Regional Jail established Christianity. Defendants' creation of and enthusiastic support for the God Pod violated the Establishment Clause. Although Defendants shut down the God Pod after Plaintiffs filed this litigation, SOF ¶ 43, nothing except a judgment of this Court prevents Defendants from re-opening the God Pod should litigation cease.

**B. Defendants Riverside Regional Jail Authority, Superintendent Newton, and Captain Gray Improperly Delegated State Authority to a Private Christian Church and Chaplain**

A government may not "allocate[e] political power on a religious criterion" or "delegate[e] the State's discretionary authority … to a group defined by its character as a religious community." *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 690, 696 (1994) (striking down redrawing of public school district lines based on contours of a Jewish community). "[W]hether or not the

government provides similar gerrymanders to people of all religious faiths, the Establishment Clause forbids the government [from] us[ing] religion as a line-drawing criterion." *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 728, (1994) (Kennedy, J., concurring). For example, the Establishment Clause prevents state governments from giving neighboring churches veto authority over liquor licenses. *Larkin v. Grendel's Den, Inc.,* 459 U.S. 116, 125-127 (1982). The Establishment Clause forbids Riverside Regional Jail Authority from vesting Good News Jail & Prison Ministries, a private Christian ministry, with state power.

Defendant Riverside Regional Jail Authority, alongside its officers and co-Defendants Superintendant Newton and Captain Gray, violated the Establishment Clause by wholesale delegating religious administration and religious grievances to a private Christian contractor and Defendant Chaplain Collins. SOF ¶¶ 41-42, 47-48. Ensuring for the religious needs of all incarcerated individuals is a requirement of both federal and Virginia state law. *See* RLUIPA, 42 U.S.C. § 2000cc-1. Under Virginia law, final authority for inmate religious services must be vested in a state employee. Va. Code Ann. § 53.1-32(D). Captain Gray, however, foreswore large swaths of both knowledge and involvement in overseeing the Good News contract and Chaplain Collins' responsibilities. SOF ¶ 42.

To be clear, correctional institutions can and should facilitate religious services, religious volunteers, and religious accommodations for inmates of all faiths, including through community outreach. A jail's efforts to facilitate Christian services for Christian inmates, while also facilitating services for other faiths, is appropriate. *See generally Cutter*, 544 U.S. at 720-724. Defendants' and Riverside Regional Jail Authority's constitutional error is not that they interacted with Good News or Chaplain Collins at all. The problem is that Defendants Riverside Regional Jail Authority, Superintendent Newton, and Captain Gray expressly delegated state power to a private Christian church while permitting that Church to run Christian-specific and segregated state programming. SOF ¶¶ 41-48. There is no scenario in which Riverside Regional Jail Authority's delegations of government

power to an exclusively Christian group is constitutional. *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 706–07 (1994).

After five-year continuous contractual relationship between Riverside Regional Jail Authority and Good News Jail & Prison Ministries, the new Superintendent of Riverside Regional Jail elected to let the contract expire two months ago. SOF ¶¶ 36, 40. Because Defendants remain free, however, to re-contract with each other, to re-contract with another private faith-based ministry, or otherwise to continue to delegate state functions to private religious actors, they must be enjoined.

### C. Defendants Riverside Regional Jail Authority, Superintendent Newton, Captain Gray, and Chaplain Collins Improperly Required a Religious Test

Defendants Riverside Regional Jail Authority, Captain Gray, and Chaplain Collins further trespassed on the Establishment Clause by mandating a religious test as a condition of access to common fare meals. Barring individuals from state benefits on the basis of state-imposed religious criteria violates the Constitution. *Torcaso v. Watkins*, 367 U.S. 488, 491, 495-496 (1961) (explaining that the Constitution puts the people "securely beyond the reach of religious test oaths").

Although two Plaintiffs "passed" and one "failed" Defendants' Religious Questionnaire, an Establishment Clause violation exists because the Religious Questionnaire exists. SOF ¶¶ 2, 7, 11, 26. It is of no moment that Defendants administered the Religious Questionnaire to any inmate of any faith seeking access to common fare. *See* SOF ¶ 26; MSJ Ex. 10, Diet Policy; MSJ Ex. 12, Religious Scoring Key. As the Supreme Court once recognized, "It is not only the conclusions that may be reached by the [Government] which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry leading to findings and conclusions." *N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979). A Supreme Court plurality later recognized that government action which requires "inquiry into the recipient's religious views" including details of how "sectarian" those views are "is not only unnecessary but also offensive." *Mitchell v. Helms*, 530 U.S. 793, 828 (2000) (plurality opinion). The plurality continued: "It is well established, in numerous other contexts, that

24

courts should refrain from trolling through a person's or institution's religious beliefs." *Id.*

The Religious Questionnaire, with its "confusing" scoring key which weights life-long adherents over recent converts, violates the Establishment Clause due to its very existence. *See* SOF ¶ 27; MSJ Ex. 12, Religious Scoring Key. Although Captain Gray testified that she instructed the Religious Questionnaire to cease being used, no new policy has been promulgated or produced. SOF ¶ 27. Moreover, Captain Gray is no longer the Chief of Programs. SOF ¶ 41. Absent an injunction from this Court, Defendants could choose to once again follow the operative Special Diets policy, MSJ Ex. 10, and begin anew administering religious tests.

### D. Defendants' Preferential and Intrusive Religious Actions Violate *Lemon*

The classic Establishment Clause test inquires into "the purposes and effects of a challenged government action, as well as any entanglement with religion that it might entail." *Am. Legion v. Am. Humanist Ass'n,* 139 S. Ct. 2067, 2080 (2019) (citing *Lemon v. Kurtzman,* 403 U.S. 602, 612–613 (1971)). Riverside Regional Jail Authority's and Defendants' actions also violate the *Lemon* test. Defendants' purpose and effect of promoting Christianity is demonstrated by their creation of a religiously-segregated God Pod and delegation of Chaplain authority to a private, contracted Church. *See* Sections II-A and II-B, above. And Defendants' impermissible entanglement between church and state functions is shown by the state's impermissible delegation of authority to Chaplain Collins, as well as its decision to subject inmates to a religious test. *See* Sections II-B and II-C, above.

\* \* \*

This Court should issue declaratory and injunctive relief against Defendants' Establishment Clause violations. Specifically, Defendants should be enjoined from segregating inmate housing on the basis of faith or inmates' commitment to Biblical principles. Defendants should be enjoined from delegating government functions to private chaplains employed by a faith-based institution. Defendants should be enjoined from administering religious tests as a condition of inmates' access to

prison services. And the Court should order further proceedings regarding 42 U.S.C. § 1983 damages and 42 U.S.C. § 1988 attorney's fees.

### III. DEFENDANTS' PREFERENCES FOR CHRISTIANITY AND FAILURES TO ACCOMODATE ISLAM VIOLATE OTHER LEGAL DOCTRINES

#### A. DEFENDANTS VIOLATED THE FREE EXERCISE CLAUSE

The Free Exercise Clause of the United States Constitution provides: "Congress shall make no law … prohibiting the free exercise [of religion]." U.S. CONST. Amend. I. The Free Exercise Clause applies with full force and effect to the acts of state and local government entities and officials pursuant to the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). State action that is not religiously neutral violates the Free Exercise Clause unless the State satisfies strict scrutiny. *Id.* at 534. ("Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality."). Strict scrutiny under the Free Exercise Clause closely resembles the legal analysis now required under RLUIPA. *See generally Holt v. Hobbs*, 574 U.S. 352 at 859-862, 866 (2015. It also tracks the analysis required by the Establishment Clause. *Cf. Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 188–89 (2012) (explaining that the same ministerial interference actions violate both the Free Exercise Clause and the Establishment Clause). Therefore, for the reasons stated in Sections I and II, above, Defendants' preferential religious conduct and failure to accommodate Islam also violates the Free Exercise Clause. It must be enjoined.

#### B. DEFENDANTS VIOLATED THE EQUAL PROTECTION CLAUSE

The Fourteenth Amendment's Equal Protection Clause provides that "No state shall … deny to any person within its jurisdiction the equal protection of the laws." Equal protection asks whether Government action adversely affects a "suspect class," such as by drawing distinctions based on race, ethnicity, national origin, or religion. *See, e.g., Harbin–Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005).

Religious distinctions are "inherently suspect." *City of New Orleans v. Dukes*, 166 427 U.S. 297, 303 (1976).

Conduct which violates the rights of religious people under the First Amendment necessarily also violates their rights under the Equal Protection Clause, as "the Free Exercise Clause, the Establishment Clause … and the Equal Protection Clause as applied to religion—all speak with one voice." *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 715 (1994) (O'Connor, J., concurring); *see also Awad v. Ziriax*, 670 F.3d 1111, 1128 (10th Cir. 2012) (explaining that Establishment Clause jurisprudence is a "counterpart to the Equal Protection Clause" insofar as both remedy religious discrimination and require strict scrutiny). Therefore, for the reasons stated in Sections I, II, and III-A above, Defendants' Christian-preferential conduct and failures to accommodate Islam also violates the Free Exercise Clause. It must be enjoined.

### C.    DEFENDANTS VIOLATED THE VIRGINIA CONSTITUTION

The Virginia Constitution, Art. 1 § 16, provides that "all men are equally entitled to the free exercise of religion," and that "the General Assembly shall not prescribe any religious test whatever, or confer any peculiar privileges or advantages on any sect or denomination. Virginia constitutional claims are analyzed comparably to First Amendment claims, and thus Defendants' Christian-preferential conduct and failures to accommodate Islam must be enjoined. *See, e.g., Virginia Coll. Bldg. Auth. v. Lynn,* 260 Va. 608, 626 (2000) (recognizing Art. I § 16 as a "parallel provision" to the First Amendment).

* * *

The Court should issue declaratory and injunctive relief as to Defendants' violations of the Free Exercise Clause, Equal Protection Clause, and Virginia Constitution in the form already requested by Plaintiffs. The Court should then order further proceedings regarding 42 U.S.C. § 1983 damages and 42 U.S.C. § 1988 costs and attorney's fees.

## IV.    PLAINTIFFS EXHAUSTED AVAILABLE ADMINISTRATIVE REMEDIES

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "No action shall be brought with respect to prison conditions … until such administrative remedies as are available are exhausted." 42 USC § 1997e.  Nonexhaustion is an affirmative defense under the PLRA.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  Thus, "defendants bear the burden of establishing that a prisoner has failed to exhaust his administrative remedies." *Id.; accord Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

The primary purpose of the grievance system and the resulting exhaustion requirement is to "alert prison officials to a problem." *Jones*, 549 U.S. at 219 (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004).  The level of detail necessary in a grievance is minimal.  Unless the administrative rulebook requires otherwise, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002); *see also Johnson*, 385 F.3d at 517 ("a grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit").  "All the grievance need do is object intelligibly to some asserted shortcoming." *Strong*, 297 F.3d at 650; see also *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (same, quoting *Strong*); *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (same).

Because the standard is one of fair notice, the facts and allegations in an inmate grievance do not have to exactly track the allegations in a later filed complaint for exhaustion to occur.  After all, "the grievance is not a summons and complaint that initiates adversarial litigation." *Jones*, 548 U.S. at 219 (quoting *Johnson v. Johnson*, 385 F.3d at 522). So "long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA." *Jackson v. Ivens*, 244 F. App'x 508, 513 (3d Cir. 2007) (unpublished opinion) (citing *Woodford v. Ngo*, 548 U.S. 81, 95 (2006)). Instead, a grievance must only be "sufficiently detailed to permit a reasonable person to

understand that his grievance assertions are reasonably related," to the conduct complained of in the Complaint. *Aten v. S.C. Dep't of Corr.*, No. 17-cv-874, 2018 WL 4560564, at *3 (D.S.C. June 13, 2018), *report and recommendation adopted*, 2018 WL 4178445 (D.S.C. Aug. 31, 2018).

Plaintiffs grieved and exhausted Ramadan-related meal problems. SOF ¶¶ 4, 8, 13; MSJ Exs. 16, 21, 34, 39, 40, 41, 42, Plaintiffs' Ramadan Grievances. Plaintiffs also grieved problems with access to Islamic instruction, including disparities between Christian and Muslim services. SOF ¶¶ 4, 8, 13. Young grieved that the Chaplain did not allow Muslim incarcerated individuals to attend Jummah prayers on that day while there was Christian based programming that was allowed at the same time. SOF ¶¶ 4; MSJ Ex. 34 at Grievance Case No. 18-09-41139. Robertson grieved that Christian incarcerated individuals are allowed to have classes while Muslims are not granted the same right. SOF ¶¶ 8; MSJ Ex. 21 at Grievance Case No. 18-09-41035. Horton grieved that there were very few Muslim classes and religious services offered while Christian Bible Study, by comparison, met quite often. SOF ¶ 13; MSJ Ex. 17 at Grievance Case No. 18-09-41058. All of these grievances were grieved to administrative completion.

Plaintiffs also filed other grievances complaining about the unequal treatment of Muslims and Christians but for which there is no record of a finished appeal. *See generally* SOF ¶¶ 4, 8, 13, 20. The fault for the lack of a final written record, however, rests squarely on the Riverside Regional Jail Defendants and not on Plaintiffs. As both Plaintiffs testified and the Riverside Regional Jail Authority acknowledged, uncompleted grievances indicate that jail employees never signed off on or returned the grievance paper to the inmate. *See* SOF ¶¶ 4, 8, 13. And Riverside Regional Jail Authority's admitted failure (SOF ¶ 20) to abide by Defendants' own grievance policy (MSJ Ex. 6) means Plaintiffs exhausted their available remedies. *See, e.g., Robinson v. Superintendent Rockview SCI,* 831 F.3d 148, 154 (3d Cir. 2016) (joining "the unanimous view of the Courts of Appeals" that the timely failure to respond to a grievance renders those administrative remedies unavailable under the PLRA); *Mattress*

*v. Taylor*, 487 F. Supp. 2d 665, 671 (D.S.C. 2007) (same); *Glover v. Young*, 10-cv-523, 2011 WL 3476429, at *3 (W.D.N.C. Aug. 9, 2011) (same).

Plaintiffs repeatedly grieved general disparities between treatment of Christian vs. Muslim programming at Riverside Regional Jail. Although the grievances RRJ found written copies of do not grieve the "God Pod" itself, the Life Learning Program was not independently grievable. Inmates may only grieve matters "which affect the grievant personally." VADOC Offender Grievance Policy at § IV(M)(1). Where a grievance is unavailable, it need not be exhausted. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).

Plaintiffs' inability to obtain equal religious programming for their Muslim faith affects them personally. But the mere fact that *other*, Christian, inmates receive special privileges via Chaplain Collins, Good News and the Life Learning Program does not. Although Plaintiff Horton dreamed of requesting a separate Muslim Pod after the God Pod was announced, MSJ Ex. C, Horton Dep. at 70:20-24, such a request would also have been ungrievable because any faith-segregated housing program violates the Establishment Clause. *See* VADOC Offender Grievance Policy at § IV(M)(2)(b) (federal law is not grievable). Plaintiffs could neither object to other prisoners having access to a God Pod because it did not affect them personally, nor could they object to Riverside Regional Jail not creating a Muslim Pod because faith-segregated housing is illegal. Accordingly, Plaintiffs grieved what they could: equal access to religious programming. SOF ¶¶ 4, 8, 13.

## CONCLUSION

The Court should **GRANT** Plaintiffs' Motion for Summary Judgment and issue declaratory and injunctive relief as to all of Plaintiffs' claims. The Court should then initiate any further proceedings as are necessary to afford Plaintiffs with full relief, including proceedings to calculate Plaintiffs' § 1983 damages and § 1988 costs and attorney's fees.

DATED:  August 28, 2019                Respectfully submitted,

CAIR LEGAL DEFENSE FUND

/s/ Lena F. Masri
Lena F. Masri (DC: 1000019)
Gadeir I. Abbas (VA: 81161)*
Carolyn M. Homer (DC: 1049145) ±
Justin M. Sadowsky (DC: 977642)
453 New Jersey Ave SE
Washington, DC 20003
Tel: (202) 516-4724
Fax: (202) 379-3317

± Admitted *pro hac vice*

*Mr. Abbas licensed in VA, not in D.C.*
*Practice limited to federal matters*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2019, I filed the foregoing document via the Court's

CM/ECF system.  I further certify that counsel for Defendants will automatically receive service of

this filing via electronic mail.

/s/ *Lena Masri*
Lena Masri